```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
                         AT BECKLEY
```

**UNITED STATES OF AMERICA**

v.                                    CRIMINAL NO. 5:06-00025

**ROBERT E. GRAHAM**

### Memorandum Opinion and Order

Pending before this court is defendant Robert E. Graham's Motion for a Judgment of Acquittal. (Doc. No. 109.) In considering this motion, the court has also reviewed the United States' responsive memorandum. (Doc. No. 111.) For reasons stated below, defendant's Motion for a Judgment of Acquittal is **DENIED.** The Clerk is directed to send a copy of this Memorandum Opinion and Order to all counsel of record.

### A.   Background

On July 24, 2006 through July 28, 2006, this court tried defendant in a bench trial, as defendant executed a knowing and valid waiver of his constitutional right to a trial by jury. (Doc. No. 107 at 1.) On August 30, 2006, this court entered its Judgment Order, finding defendant guilty on Count Fourteen of the Second Superseding Indictment, and not guilty as to Counts One through Thirteen and Counts Fifteen through Thirty-Nine of the Second Superseding Indictment. (Doc. No. 108.) Count Fourteen of the Second Superseding Indictment charged defendant with a violation of 18 U.S.C. § 666(A)(1)(a) and alleged that defendant,

during the year 2004, did knowingly "embezzle, steal, and obtain by fraud and otherwise without authority convert to the use of a person other than the rightful owner and intentionally misapplied property valued at approximately $31,129.00 that was owned by and under the care, custody and control of the Council on Aging, Inc. by cashing out sick leave in violation of his employment contract." (Doc. No. 86 at 17.) On September 11, 2006, defendant filed a Motion for a Judgment of Acquittal, (Doc. No. 109) and on September 19, 2006, the United States filed its response memorandum to defendant's motion. (Doc. No. 111.) As such, this motion is ripe for adjudication.

## B. Analysis

In finding defendant guilty on Count Fourteen of the Second Superseding Indictment, this court found that defendant "cashed in the sick leave without the approval of his board, knowing that he needed board approval, thereby effectively stealing the money or converting it to his own use." (Doc. No. 107 at 11.)

In support of his motion for acquittal, defendant argues (1) there is no evidence that defendant was required to seek board approval in 2004 before cashing out unused sick leave, and (2) there is no evidence that defendant knew that he needed further board approval before cashing out unused sick leave in 2004. (Doc. No. 110 at 7-11.)

In ruling on a motion for a judgment of acquittal, this court must "view all evidence in the light most favorable to the prosecution and inquire whether any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt." United States v. Lentz, 383 F.3d 191, 224 (4th Cir. 2004). "In assessing the sufficiency of the evidence presented in a bench trial, [this court] must uphold a guilty verdict if, taking the view most favorable to the Government, there is substantial evidence to support the verdict." Elliott v. United States, 332 F.3d 753, 760 (4th Cir. 2003).

Looking at the evidence in this case in the light most favorable to the Government, this court must uphold its guilty verdict. Contrary to defendant's first argument, there is substantial evidence to support a finding that defendant was required to return to the board in 2004 before cashing out unused sick leave. Defendant's employment contract with the Council on Aging ("COA"), which he entered into in March 2002, entitled him to two sick days each month beginning in May 1975, and it provided that the sick days could accumulate and carry over from year to year.[1] (Gov. Ex. 5.) Additionally, the employment

---

[1] Defendant's original employment contract with COA, which he entered into on December 4, 2001, retroactively gave him one sick day a month beginning in May 1975 and allowed the sick leave to accumulate from year to year. (Gov. Ex. 1 at 2.) Defendant amended his contract with COA on March 28, 2002 to provide him with two sick days each month. (See Gov. Ex. 5.)

3

contract provided that defendant's accumulated sick leave could be "converted into cash compensation if used for illnesses or upon termination of [the employment] contract." (Id.) Further, COA's Policy and Procedures Manual states, "All exempt, full and part-time employees will be granted one (1) day of sick leave for each full month up to twelve (12) days per calendar year. . . . Employees will not be paid for any sick days not used." (Gov. Ex. 59 at 6.)

However, in 2003, defendant began cashing out unused sick leave merely because the sick leave had accrued on COA's accounting books.[2] (Gov. Ex. 11 at 2.) When he initially began cashing out the unused sick leave in a manner proscribed by both his employment contract and COA's written policy, defendant sought board approval. (See Gov. Exs. 11, 19, & 21.) He went before COA's board three times in 2003 to seek approval for cashing out his accrued sick leave, and each time the board approved. (See Gov. Exs. 11, 19, & 21.) However, COA's board never voted on, nor discussed, allowing defendant to continue cashing out his unused sick leave without further board approval.

Thus, looking at the evidence in the light most favorable to the Government, there is substantial evidence to support a

---

[2] In the Executive Director's notes for the January 23, 2003 COA board meeting, defendant wrote, "I am requesting permission to buy out some of my sick leave. It shows on the books as an accrual. I can already buy out my vacation." (Gov. Ex. 10 at 2.)

finding that in 2004, defendant needed board approval before cashing out his unused sick leave.

Defendant's second argument, that the evidence does not support a finding that defendant knew he needed board approval in 2004, must also fail. In finding defendant guilty on Count Fourteen, this court found that "the fact that Graham sought board approval for the earlier cash-outs of sick leave [in 2003] is compelling evidence that he knew such approval was required [in 2004]." (Doc. No. 107 at 11.)

Defendant argues the fact that he sought board approval in 2003 does not support the conclusion that he knew he needed to continue to get board approval in 2004. (Doc. No. 110 at p. 12.) Defendant argues that this court could have reached different conclusions from the evidence. For instance, defendant suggests that because he went before the board three time in 2003 before cashing out unused sick leave, the court could have alternatively reasoned that defendant thought he did not have to return to the board in 2004 or that defendant simply forgot to return to the board in 2004. (Id.)

However, when the evidence supports different interpretations, the fact-finder ultimately decides which interpretation to believe, and its conclusion will not be overturned as long as there is substantial evidence for its determination. See United States v. Garcia, 868 F.2d 114, 116

5

(4th Cir. 1989).  In this case, there is substantial evidence to support the court's conclusion that defendant knew he needed board approval in 2004.

Defendant negotiated an employment contract that allowed him to convert his unused sick days into cash compensation for only two reasons: (1) if the sick days were used for illnesses, or (2) if COA terminated his employment contract.  (Gov. Ex. 5.)  When defendant initially began cashing out unused sick leave in 2003 for reasons prohibited by his employment contract and COA's written policy, he sought board approval.  Defendant received permission from COA's board on January 27, 2003, March 27, 2003, and again on May 18, 2003 before cashing out unused sick leave.  (See Gov. Exs. 11, 19 & 21.)  However, defendant did not request board approval before cashing out 250 hours of unused sick leave valued at $22,235.00 on January 14, 2004 (see Gov. Exs. 35 & 36) nor before cashing out 100 hours of unused sick leave valued at $8,894.00 on February 12, 2004.[3]  (See Gov. Exs. 38 & 39.)  This evidence clearly supports a finding that defendant knew he needed

---

[3] Defendant also cashed out sick leave in June 2003 and July 2003 without seeking board approval.  These two instances were included in Count Thirteen of the Second Superseding Indictment.  (See Doc. No. 86 at p. 16.)  However, defendant sought board approval for a majority of the allegations set forth in Count Thirteen.  (See Gov. Exs. 11, 19 & 21.)  Because the Government could not prove every material allegation in Count Thirteen beyond a reasonable doubt, this court was required to find defendant not guilty on Count Thirteen, even though Count Thirteen encompassed two instances where defendant cashed out sick leave without board approval.

board approval in 2004 before cashing out his sick leave, he intentionally failed to get board approval, and he thereby effectively stole COA's money or converted it to his own use.

Thus, looking at the evidence in this case in the light most favorable to the Government, it is clear that a "rational trier of fact" could find all of the elements necessary to support a conviction under 18 U.S.C. § 666(A)(1)(a) beyond a reasonable doubt. Accordingly, this court must uphold its guilty verdict. See Elliott, 332 F.3d at 760.

### C. Conclusion

Therefore, for reasons stated above, defendant's Motion for a Judgment of Acquittal is **DENIED**. The Clerk is directed to send a copy of this Memorandum Opinion and Order to all counsel of record.

It is so ORDERED this 6th day of October, 2006.

ENTER:

David A. Faber
Chief Judge