**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BECKLEY**

**UNITED STATES OF AMERICA**

**v.**                                    **CRIMINAL NO. 5:06-00025**

**ROBERT E. GRAHAM**

**MEMORANDUM OPINION**

By Order entered December 17, 2008, the court denied the
motion of Robert E. Graham ("Graham") for a Certificate of
Innocence under 28 U.S.C. § 2513.  The reasons for that decision
follow.

**I.  Statement of the Case**

On July 18, 2006, a federal grand jury returned a second
superseding indictment charging Graham in 39 counts with various
offenses involving federal program fraud.  Graham pleaded not
guilty to all of the charges and waived his right to a jury
trial.  From July 24, 2006, through July 28, 2006, the court
conducted a bench trial of all of the charges against Graham.  On
August 30, 2006, the court found Graham guilty as to Count 14,
which charged him with stealing $31,129 from his employer, the
Council on Aging, Inc. ("COA"), by cashing out sick leave in
violation of his employment contract and 18 U.S.C. § 666.  He was
found not guilty on all other charges.  The court sentenced
Graham to 24 months imprisonment, three years of supervised

release, a fine of $10,000, a special assessment of $100, and a forfeiture of $31,129.

Graham's relevant employment contract as Executive Director of COA and its sister corporation, All Care Home and Community Services, Inc. ("All Care"), contained the following provision concerning sick leave:

> SICK LEAVE/PERSONAL BUSINESS: From the date of employment sometime around May 1975 till the termination of employment, Employee shall be entitled to one day per month of accumulating Sick Leave, beginning on the first date of Employee's employment.  Sick leave may be accumulated and carried over from year to year.  Sick leave benefits may be converted into cash compensation if used for illnesses or upon the termination of this contract.

Despite the fact that the contract permitted cash out of sick leave under only two circumstances – illness or termination – Graham requested and received permission from his Board of Directors to cash out some of his sick leave in 2003.  In 2004, he again cashed out sick leave, this time without seeking approval of his directors.  The 2004 cash out was the subject of Count 14, the offense on which Graham was convicted at trial.  In determining to find Graham guilty of Count 14, this court reasoned as follows:

> [T]he conclusion is inescapable that Graham cashed in the sick leave without the approval of his board, knowing he needed board approval, thereby effectively stealing the money or converting it to his own use.  From the evidence taken at trial it is clear that defendant, an employee, took this money from COA without having any board approval whatsoever.  These transactions each constituted major changes of the sort that required board

2

> approval.  The fact that Graham sought board approval for the earlier cash-outs of sick leave is compelling evidence that he knew such approval was required.

Memorandum Opinion of August 30, 2006, at 11.

Concluding that no reasonable trier of fact could have found Graham guilty beyond a reasonable doubt on such evidence, the Court of Appeals reversed Graham's conviction and directed this court to enter a judgment of not guilty as to Count 14. Unfortunately, by that time Graham had served a portion of his term of incarceration – some 13 months in prison.

Contending he was unjustly convicted of an offense against the United States and imprisoned, Graham has filed a claim for compensation in the United States Court of Federal Claims pursuant to 28 U.S.C. §§ 1495 and 2513.  He moves this court for a Certificate of Innocence, a necessary prerequisite to the relief he seeks in the Court of Claims.[1]

## II.   The Legal Standard

28 U.S.C. § 1495 confers jurisdiction on the Court of Federal Claims over "any claim for damages by any person unjustly convicted of an offense against the United States and imprisoned."  That statute must be read in conjunction with 28 U.S.C. § 2513, which provides:

---

[1]  Graham originally filed his motion for a Certificate of Innocence with the United States Court of Appeals for the Fourth Circuit.  That court dismissed his motion without prejudice, holding that the trial court was the appropriate forum to issue such a certificate.

(a) Any person suing under section 1495 of this title must allege and prove that:

(1) His conviction has been reversed or set aside on the ground that he is not guilty of the offense of which he was convicted, or on new trial or rehearing he was found not guilty of such offense, as appears from the record or certificate of the court setting aside or reversing such conviction, or that he has been pardoned upon the stated ground of innocence and unjust conviction and

(2) He did not commit any of the acts charged or his acts, deeds, or omissions in connection with such charge constituted no offense against the United States, or any State, Territory or the District of Columbia, and he did not by misconduct or neglect cause or bring about his own prosecution.

(b) Proof of the requisite facts shall be by a certificate of the court or pardon wherein such facts are alleged to appear, and other evidence thereof shall not be received.

* * *

(e) The amount of damages awarded shall not exceed $100,000 for each 12-month period of incarceration for any plaintiff who was unjustly sentenced to death and $50,000 for each 12-month period of incarceration for any other plaintiff.

Whether or not an applicant is entitled to a certificate of innocence is a question committed to the sound discretion of the trial court and the ultimate exoneration of the applicant does not make it mandatory that the certificate be issued. Betts v. United States, 10 F.3d 1278, 1283-84 (7th Cir. 1993); Rigsbee v. United States, 204 F.2d 70, 72 and n. 2 (D.C. Cir. 1953).

Section 2513 does not mandate the payment of public funds to everyone who has spent time in custody and been ultimately

4

acquitted.  It does something quite different – it orders compensation to the truly innocent who have been prosecuted through no fault of their own.  What is contemplated is the compensation of victims of prosecutorial overreach.  The fundamental proposition underlying the statute is this – there is a difference between someone who is legitimately prosecuted and ultimately found not guilty and one who is wrongfully prosecuted when truly innocent.  The statute is designed to compensate the latter; it has nothing to say about the former.  If every incarcerated person who was acquitted at trial or whose conviction was reversed on appeal were entitled to compensation there would have been no reason for Congress to include the certificate of innocence procedure in the statutory scheme.  It could have simply allowed a claim to be supported by the order of acquittal or reversal on appeal.

Additionally, the statute inverts the burden of proof; the claimant must prove his own actual innocence and he must do so to the satisfaction of the judge who heard the evidence at trial. Moreover, he must not only show his own actual innocence, he must demonstrate that he did nothing by misconduct, or even by neglect, to bring about his own prosecution.  In short, Congress clearly intended to provide compensation only to innocent persons who can prove that they have been unjustly prosecuted through no fault of their own.

There are few reported cases that discuss § 2513.  The paucity of case law under the statute suggests that it is a remedy that is rarely pursued successfully.  It is rarely used, this court believes, because few applicants can satisfy its rigorous standard.

The cases we do have show clearly that § 2513 provides a remedy to be applied only in exceptional cases.  Discussing an earlier version of § 2513, the court in United States v. Keegan, 71 F.Supp. 623, 628 (S.D.N.Y. 1947), recounted at length its legislative history and noted that the cases in which relief can be claimed are limited to those in which "the claimant shall affirmatively prove his innocence.  Hence only a most flagrant case of injustice could be brought within the terms of this section."  The court concluded that from the legislative history "it will clearly appear that Congress never intended that every imprisoned person whose conviction had been set aside, should be indemnified by the Government."  Id. at 635.  The court in Keegan observed that wide discretion in granting or withholding the certificate is vested in the trial court and that the certificate should not be issued unless that court "is satisfied from the record before it that petitioner is altogether innocent."  Id. at 636.  The court must "separate from the group of persons whose convictions have been reversed, those few who are in fact innocent of any offense whatsoever."  Id. at 632.

### III.    Graham's Own Misconduct

COA and All Care operated out of Itmann, Wyoming County, West Virginia, as not-for-profit corporations under the Internal Revenue Code, 26 U.S.C. § 501(c)(3).  COA provided nutritional care, transportation, medical, employment and other services to the senior citizens of Wyoming County and surrounding areas.  COA received funding from Medicaid, the State of West Virginia and the United States Department of Labor.  All Care also provided services to the elderly and the disabled, and received the majority of its funding from Medicaid.

Graham was the Executive Director of COA beginning in 1979 and of All Care beginning in 1984.  Prior to December 2001, he did not have a written contract with either COA or All Care.  In December 2001, he signed similar employment contracts with both.  Prior to December 2001, Graham received a total salary from COA and All Care of $125,000.  In 2001 his combined salary was increased to $185,000.  His contract, which Graham prepared, was for a term of 20 years, provided for renewal at Graham's option, and contained a provision that he could not be terminated without his consent.

In March 2002, the costs of operation of All Care were assumed by COA due to changes in Medicaid reimbursement.  A new employment contract was executed by the defendant and COA on March 28, 2002.  Under the new contract, COA assumed all

responsibility for payment of the defendant's $185,000 salary and sick leave.  Graham was working under this contract at the time of the instant offense.  In regard to sick leave, the new contract was changed to state,

> SICK LEAVE/PERSONAL BUSINESS.  Beginning on the date of employment sometime around May 1975 until the termination of employment, Employee shall be entitled to accrue two days (16 hours) per month paid sick leave time.  Sick Leave may be accumulated from year to year.  Sick leave benefits may be converted into cash compensation if used for illnesses or upon the termination of this contract.

Under the contracts, Graham agreed to perform faithfully, industriously, and to the best of his ability, experience and talents all the duties required of him.

Graham selected and controlled the Boards of Directors of COA and All Care which were composed entirely of the elderly.  At the time the initial employment contract was entered in December 2001, the COA Board of Directors' president was Maxine Toliver, now deceased, who was then 82 years old.  Other board members included Hazel Morgan, age 79; Hazel Lusk, age 86; Joan Flaim, now deceased, then age 87; Edith Shields, now deceased, then age 87; Charlene Vance, age 71; Georgia Hatfield, age 77; and Martha McKinney, age 77.

Although COA and All Care were tax exempt non-profit corporations funded by tax dollars, Graham operated them for years as his own personal domain and for the financial benefit of himself and his family.  His $185,000 annual salary, excessive by

8

comparison to the pay of others in similar positions, was supplemented by the generous cash-out of sick leave Graham arranged for himself.  The evidence at trial established that Graham used employees on company time to perform personal services for himself and his family; bought at least one expensive item, a $6,000 television, through COA to get a better price and avoid sales taxes; manipulated a SEP IRA to benefit his family; and assumed a lavish lifestyle including regular visits to a "gentlemen's club."  "Bailey," a dancer at Graham's favorite club, on whom he lavished gifts and money, inquired where his money came from.  Graham told her "that he owned Council on Aging and he had built this company up and that's where the money was coming from . . . ."  Trial Transcript, July 24, 2006, p. 228.

Graham's story is a sordid tale of abuse of a position of public trust for his own personal benefit.  This court finds shocking the lack of governmental oversight that permitted such abuse to occur and does not fault the United States Attorney for his prosecution of Graham, a welcome deterrent to similar conduct by others.

The evidence against Graham, while insufficient to prove his guilt beyond a reasonable doubt, certainly shows that, in a general sense, he brought about his own prosecution. Specifically, with regard to the count upon which he was convicted at trial, Graham was at the very least negligent.  It

9

would have been a simple matter for Graham to seek board approval for cash out of sick leave relevant to this count. He either simply neglected to do so or he purposely failed to do so for some specific reason such as the belief his request would not be approved. In either event his own conduct brought about his prosecution on the count of conviction.

Accordingly, this court is unable to reach either of the conclusions mandated by 28 U.S.C. § 2513. It is not persuaded that Graham is in fact innocent, nor can it conclude that he did not by misconduct or neglect bring about his own prosecution.

The Court of Appeals carefully reviewed the evidence against Graham on the count of conviction and concluded that it was insufficient to establish his guilt beyond a reasonable doubt. A finding on appeal that the evidence adduced at trial is insufficient to support a conviction beyond a reasonable doubt is not a legitimate basis for granting a certificate of innocence. See, e.g., Finley v. United States, 2008 WL 2561594, *2 (E.D. Cal. 2008).

## IV. Conclusion

Having conducted the analysis required of the trial court under 28 U.S.C. § 2513, the court for the reasons discussed above has concluded that Graham's motion for a certificate of innocence

10

must be denied.  An Order has been entered to that effect and sent to counsel.

The Clerk is DIRECTED to send a copy of this Memorandum Opinion to all counsel of record.

**IT IS SO ORDERED** this 19th day of December, 2008.

ENTER:

David A. Faber
United States District Judge

11